UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>DEVANTAE BELL,<br><br>    Defendant. | Case No. 21-20301<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS [17]**

Devantae Bell was driving a Mercedes Benz with tinted side windows. Two Detroit police officers pulled the car over. The officers could smell burnt marijuana and observed marijuana and open intoxicants in the car. A subsequent search of the car uncovered a loaded firearm. Bell was ultimately charged in a federal indictment with being a felon in possession of a firearm. He now argues that the stop and warrantless search of the car violated his Fourth Amendment rights. As a result, he seeks to suppress the firearm. Finding no merit in Bell's claims, the motion will be DENIED.

**I.**

The testimony provided by the officers at the evidentiary hearing is consistent with the police reports and dash and body cam video that were admitted at the hearing. This evidence supports the following factual narrative.

On the night of December 22, 2020, at around 8:30 pm, Detroit police officers Ricky Mathis and Justin Matthews were on proactive patrol in Detroit. They observed a silver Mercedes Benz turn into a Citgo gas station at Schoolcraft and Greenfield roads and then immediately exit the station upon seeing the squad car. At that time, the officers observed that the Mercedes had tinted front driver-side and passenger-side windows.[1] The officers followed the vehicle for about a mile. They observed a lot of movement between the rear passenger and the driver—the rear passenger was shifting around and continued to lean toward the driver. (ECF No. 27-2, at PageID.101, 106.) The officers knew from their experience that this movement was consistent with an attempt to conceal illegal items within the vehicle. (*Id.* at PageID.106.)

The Mercedes ultimately made a left turn into a Mobile gas station at Schoolcraft and Southfield roads. (*Id.* at PageID.101, 105.) The officers were again able to observe the tinted front driver-side window. (*Id.*; Hrg. Ex. B.) After the Mercedes turned into the Mobil gas station, Officer Mathis activated the squad car's overhead lights to initiate a traffic stop for the illegally tinted windows. (ECF No. 27-2, PageID.101, 106; Hrg. Ex. B.) The Mercedes pulled up to a gas pump and stopped. (Hrg. Ex. B.)

The two police officers approached the vehicle. Officer Mathis approached the driver's window and made contact with the driver, ultimately identified as Devantae

---

[1] This is not captured on the dash cam video because the officers had not yet activated the squad car's overhead lights. Once they do, the dash cam activates and captures activity from the prior 30 seconds going forward.

Bell. (ECF No. 27-2, PageID.106; Hrg. Ex. D.) Officer Matthews approached the front passenger's window and made contact with the female sitting in the front passenger seat. (ECF No. 27-2, PageID.101, 106; Hrg. Ex. C.) The rear passenger acted as if he was sleeping. (ECF No. 27-2, PageID.101.) Both officers could smell freshly burnt marijuana coming from the vehicle. (*Id*. at PageID.101, 106.) While speaking with Bell, Officer Mathis also observed a small plastic bag containing suspected marijuana on the center dashboard. (*Id*. at PageID.106.) He also saw a clear Dixie cup in the center console cup-holder that appeared to contain a pink liquid substance. (*Id*.) Officer Matthews observed open intoxicants and smelled a strong odor of intoxicants. (ECF No. 27-2, PageID.101; Hrg. Ex. C.) More specifically, he observed a wine bottle with a broken seal that was half full and an open can of Straw-Ber-Rita malt beverage. (Hrg. Tr.)

After observing and smelling the alcohol and suspected marijuana, the officers detained all three occupants of the vehicle. (Hrg. Tr.) Officer Mathis advised Bell that he was stopped because of a window tint violation and was being detained because of the marijuana in the vehicle. (Hrg. Tr.; Hrg. Ex. D.) Officer Matthews likewise advised the female passenger that she was being detained because of what the officers observed in the front compartment of the vehicle. (Hrg. Tr.; Hrg. Ex. C.) Officer Matthews ran the names of all three vehicle occupants through the Law Enforcement Information Network (LEIN). (*Id.*; ECF No. 27-2, PageID.101, 107.)

Officer Mathis then searched the car. (Hrg. Tr.; ECF No. 27-2, PageID.101, 107.) He retrieved the unsealed bottles of alcohol, a bag of suspected marijuana, and

a freshly burnt marijuana "joint." (*Id.*) He also found a loaded Colt Diamondback .38 revolver underneath the driver-side floorboard. (*Id.*) The LEIN search revealed that none of the occupants of the vehicle possessed a concealed pistol license. (*Id.*) Thus, Bell was arrested for carrying a concealed weapon. (*Id.*) Bell was also issued citations for illegal window tints and open intoxicants in the vehicle in violation of Michigan Compiled Laws §§ 257.709(1)(a) and 257.624(a)(1). (Hrg. Tr.; Hrg. Ex. C; ECF No. 27-2, PageID.107.)

In time, Bell was charged in a federal indictment with being a felon in possession of a firearm. (ECF No. 1.) He now seeks to suppress the firearm that was recovered from the vehicle. (ECF No. 17.) Bell argues that the officers lacked probable cause for the traffic stop, detained him for too long, and had no basis to search the car. He requested an evidentiary hearing which the Court conducted on September 15, 2021.

After considering the evidence at the hearing and the parties' arguments, the Court finds no violation of Bell's constitutional rights and thus, no basis to suppress the evidence seized from the vehicle he was driving.

## II.

The Court begins with Bell's argument that the traffic stop was improper. Bell contends that he was not speeding and made a proper left turn into the Mobil gas station. He believes that the officers, traveling behind him at night, could not have seen the tinted side windows until after they pulled the car over based on the furtive movements of the back-seat passenger. And because the officers did not immediately

4

pull the car over when they first observed the tinted windows, Bell believes the window tint is simply a pretext to justify an otherwise unlawful stop based on the suspicious activity the officers observed within the car.

The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[A] vehicle stop by a police officer is a seizure within the meaning of the Fourth Amendment." *Bazzi v. City of Dearborn*, 658 F.3d 598, 603 (6th Cir. 2011) (internal quotation marks omitted). It is well established that a "police officer legally may stop a car when he has probable cause to believe that a civil traffic violation has occurred" or "reasonable suspicion of an ongoing crime." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008); *see also Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (citation omitted). This determination should be made based "on the totality of the circumstances" which "includes a realistic assessment of the situation from a law enforcement officer's perspective." *Id.* (citations omitted).

The police officers' reports, dash cam video, and testimony support that they observed the tinted front driver and passenger side windows when they first spotted the Mercedes at the Citgo gas station and then again, after following the car, when it

turned into the Mobil gas station. Driving with tinted front side windows is a civil infraction under Michigan law. *See* Mich. Comp. Laws § 257.709(1)(a) (stating that a person "shall not" operate a motor vehicle with "any nontransparent material, reflective film, or nonreflective film" upon the "side windows immediately adjacent to the driver or front seat passenger"). So the officers had probable cause to pull over the vehicle. *See United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002) ("[A] police officer may effect a traffic stop of any motorist for any traffic infraction."); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) ("[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment.").

Additionally, an officer's subjective intent when making the stop "play[s] no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813. In other words, the officer's "ulterior motivations, if any, are irrelevant." *United States v. Sanford*, 476 F.3d 391, 395 (6th Cir. 2007). So even if the DPD officers believed the occupants of the vehicle were trying to conceal contraband based on their movements within the car, the stop for improper window tints was still valid. *See Ferguson*, 8 F.3d at 392 (holding that "a traffic stop, supported by probable cause, of a vehicle as to which the officer also has suspicions of more nefarious activity, is not unreasonable because it is based at least in part upon other motivations"); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999) (an officer may stop a vehicle for a traffic violation when his true motivation is to search for contraband, as long as the officer had probable cause to initially stop the vehicle); *United States v. Blair*, 524

6

F.3d 740, 748 (6th Cir. 2008) (reiterating prior holding that "police officers [may] stop vehicles for any infraction, no matter how slight, even if the officer's real purpose was a hope that narcotics or other contraband would be found as a result of the stop" (citing *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995))); *United States v. Miller*, 413 F. App'x 841, 843 (6th Cir. 2011) ("[E]ven if [the officer] used the failure to signal as a pretext to initiate a traffic stop of an otherwise-suspicious vehicle, this fact does not undermine the probable cause that existed to make the stop if [the defendant] failed to signal his turn.").

Both officers here provided credible testimony, corroborated by the dash cam video, that they observed the tinted side windows before initiating the traffic stop. The stop was not unlawful.

### III.

Of course, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). So the Court now turns to Bell's arguments that the stop was longer than necessary to cite him for the traffic violation and involved an unconstitutional search of the vehicle.

"Under the well-known automobile exception, a warrantless search of a vehicle that has been stopped lawfully is permissible if the search is based upon probable

cause." *United States v. Crumb*, 287 F. App'x 511, 513 (6th Cir. 2008) (citation omitted); *see also Hernandez v. Boles*, 949 F.3d 251, 259 (6th Cir. 2020) ("It is blackletter law that the police can lawfully search a car without a warrant if they have probable cause."). Recall that "'[p]robable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion, and is found to exist when there is a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *Crumb*, 287 F. App'x at 513 (quoting *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006)).

Here, after pulling Bell over for driving a vehicle with illegally tinted windows, the officers had an adequate legal basis to detain Bell and the other occupants to investigate the infraction. *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012); *see also United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010) ("In the course of a stop premised on a traffic violation, police may instruct the driver or occupant to exit the vehicle."). In doing so, Officer Mathis initially approached the driver side of the vehicle and Officer Mathews approached the passenger side. As Officer Mathis obtained Bell's license, insurance, and registration, and explained the basis of the stop, both officers immediately smelled burnt marijuana coming from the vehicle.

The Sixth Circuit has repeatedly held that "an officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search." *United States v. Grayer*, No. 20-5842, 2021 U.S. App. LEXIS 25827, at *6 (6th Cir. Aug. 26, 2021) (quoting *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002)); *see also United States v. Avant*, 650 F. App'x 890, 892 (6th Cir. 2016) (smell of

8

marijuana alone is sufficient to establish probable cause to search automobile); *United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013) (probable cause arose from the officer smelling marijuana in the vehicle); *United States v. McCaster*, 466 F. App'x 443 (6th Cir. 2011) (marijuana odor coming from a car gives rise to probable cause); *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993) (probable cause existed where an officer smelled marijuana coming from a vehicle).

In addition to smelling marijuana, Officer Mathis also observed a small bag of marijuana in plain view in the car. This bolstered the probable cause to search the car. *See United States v. Puckett*, 422 F.3d 340, 343 (6th Cir. 2005) (upholding the denial of a motion to suppress where police "smelled and saw in open view the marijuana in the seat" and "[t]herefore, there was probable cause to search the car at that point"); *see also United States v. Peters*, 743 F.3d 1113 (7th Cir. 2014) (officer finding loose marijuana in car corroborated officer's testimony that he smelled marijuana and so probable cause existed). So the officers' smelling and then Officer Mathis seeing marijuana in Bell's car provided probable cause for the search.

Nothing in this case law suggests a different result now that the state of Michigan has legalized the personal possession of certain amounts of marijuana. Indeed, Michigan law still prohibits "smoking [recreational] marihuana within the passenger area of a vehicle upon a public way." Mich. Comp. Laws § 333.27954(1)(g). Michigan law also prohibits the transportation of un-encased marijuana that is accessible within the interior of the vehicle. *See* Mich. Comp. Laws § 750.474. The government further points out that the odor of burnt marijuana in a vehicle continues

to support probable cause to search a vehicle under Michigan law. *See, e.g., People v. Moorman*, 952 N.W.2d 597, 600 (Mich. Ct. App. 2020).[2]

Michigan law also makes it illegal for drivers and passengers to transport open alcohol in the passenger area of a vehicle. Mich. Comp. Laws § 257.624a ("Except as provided in subsections (2) and (5), a person who is an operator or occupant shall not transport or possess alcoholic liquor in a container that is open or uncapped or upon which the seal is broken within the passenger area of a vehicle . . . ."). So the unsealed wine bottle and open can of malt liquor that Officer Mathews observed in the vehicle also gave the officers probable cause to search the vehicle for additional contraband. *See United States v. Howton*, 260 F. App'x 813, 817 (6th Cir. 2008) (finding troopers had probable cause to search vehicle upon seeing open containers of alcohol being transported in the vehicle in violation of state law); *United States v. McGuire*, 957 F.2d 310, 314 (7th Cir. 1992) ("Once Trooper Newman discovered that McGuire was transporting open, alcoholic liquor in violation of Illinois law, . . . he had probable cause to believe that the car contained additional contraband or evidence," which "gave Newman the authority to search every part of the vehicle and its contents that could conceal additional contraband.").

The Court can now circle back to Bell's complaint about the length of the stop. To qualify as a reasonable seizure, a stop must be "limited in scope and duration."

---

[2] At the hearing, the government also argued that "state law is irrelevant in federal court when the [Fourth Amendment] Exclusionary Rule is at issue." *United States v. Franklin*, 284 F. App'x 266, 271 (6th Cir. 2008); *see also Virginia v. Moore*, 128 S. Ct. 1598 (2008).

*Royer*, 460 U.S. at 500. There is no dispute that as part of the traffic stop the officers had the right to issue a traffic citation and perform a LEIN check. *See United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999) (finding that an officer may lawfully detain a person stopped until record checks are complete and citations issued). They also had a right to search the car based on what they smelled and observed. There was nothing needlessly prolonged or excessive about the approximately 17-minute duration of the investigatory detention and then the follow-up work needed for the resulting arrests.

## IV.

In sum, there was no violation of Bell's Fourth Amendment rights. The officers had probable cause to stop Bell's vehicle for a traffic violation and probable cause to then search the vehicle given the odor and presence of marijuana and open intoxicants in the vehicle. Thus, there is no basis to suppress the firearm seized from the vehicle. Bell's motion to suppress is DENIED.

IT IS SO ORDERED.

Dated: September 24, 2021

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES DISTRICT JUDGE